**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **RANDY ALGOE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **STATE OF TEXAS, et al.,** | § | **Civil Action No. 3:15-CV-1162-D** |
| | § | **(consol. with 3:15-CV-1204-D)** |
| **Defendants.** | § | |
| | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION**</u>

Pursuant to *Special Order No. 3-251*, this *pro se in forma pauperis* case has been automatically referred for judicial screening.  Based on the relevant filings and applicable law, the plaintiff's federal and state law claims should be **DISMISSED** with prejudice, and his purported removal action should be **REMANDED** to the Justice of the Peace Court; Precinct 3 of Tarrant County, Texas, for lack of subject matter jurisdiction.

## I. BACKGROUND

On April 16, 2015, Randy Algoe (Plaintiff) filed a civil rights action against eighteen defendants under "42 U.S.C. §§ 1983, 1985, 1986 and others" based on the revocation of his Texas driver's license under the Nonresident Violator Compact of 1977.  (doc. 3 at 1-2.)[1]  Five days later, he filed a second federal action seeking to remove an administrative proceeding that he requested before the Texas Department of Public Safety (DPS) to challenge the revocation of driver's license. *See State of Texas v. Algoe,* No. 3:15-CV-1204-D (N.D. Tex.).

On November 18, 2005, Plaintiff received a traffic citation for speeding while driving

---

[1] Citations to the record refer to the CM/ECF system page number at the top of each page rather than the page numbers at the bottom of each filing.

through Escambia County, Florida, on his way to Texas. (Doc. 3 at 11.)  Defendant Florida Highway

Patrolman Robert Harrigill (Harrigill) was allegedly abusive and violent towards him during the

traffic stop by attempting to ram his car, yelling obscenities at him, holding him at gunpoint,

threatening to throw him in jail, and striking him in the chest. (*Id.* at 13-17.) Plaintiff subsequently

challenged this traffic ticket in Escambia County Circuit Court and submitted discovery requests to

the Escambia County prosecutors, but they allegedly never responded. (*Id.* at 18.) After a bench trial,

defendant Florida Circuit Court Judge David Akerman (Akerman) found Plaintiff guilty. (*Id.*)

Contending that the court proceedings were "nothing less than extortion and racketeering by a

kangaroo court seeking revenue," he appealed, and relief was denied by both the Florida First

District Court of Appeals and the Florida Supreme Court. (*Id*. at 54-56).  Judge Terry Terrell

(Terrell) of the First District Court of Appeals in Florida is also named as a defendant in this suit.

The Clerk of the Escambia County Circuit Court subsequently issued Plaintiff notice that he

owed a traffic fine in the amount of $83.50, due on December 10, 2008. (*Id*. at 57.) He returned to

Texas and refused to pay the fine, and the Florida court system sent notice to the Texas Department

of Public Safety (DPS) under the Nonresident Violator Compact of 1977 to enforce the unpaid fine

by revoking his driver's license until he complied. (*Id*. at 19.)   It also used defendant CSI as a

collection agent to attempt to collect the fine.  (*Id*. at 22.)  Plaintiff alleges that CSI violated the Fair

Debt Collection and Practices Act by attempting to collect a "fraudulent" debt. (*Id.*)

On January 11, 2013, defendant Irving Police Officer A. Lotspeich (Lotspeich) issued

Plaintiff a traffic citation. (*Id*. at 6-8.) He contested this citation and was found guilty in front of

defendant Irving Municipal Court Judge Rodney Adams (Adams).[2] (*Id.*) Plaintiff refused to pay the

---

[2] Plaintiff  attempted to remove this proceeding, but the case was ultimately remanded for lack of subject matter jurisdiction. *See Irving Police Dept. v. Algoe*, No. 3:13-CV-1796-M, 2013 WL 3943291 (N.D. Tex. July 30, 2013).

2

fine and alleges that defendant Irving prosecutor Candace Chappell (Chappell) failed to establish the required elements of the traffic offense during the trial, and that Adams did not allow him to appeal the conviction.[3] (*Id.* at 27.)

On February 27, 2014, defendant Grand Prairie Police Officer Sean Ward (Ward) issued Plaintiff a traffic citation. (*Id.* at 6-8.) He contested this citation and was found guilty by defendant Grand Prairie Municipal Court Judge Chad Bull (Bull). (*Id.*) Plaintiff alleges that defendant Grand Prairie prosecutors Patricia Nasworthy (Nasworthy) and Megan Suarez (Suarez) failed to provide him with requested discovery before the trial, failed to sufficiently establish the required elements for the traffic violation because Officer Ward was an "interested party witness" based on compensation for his time testifying, and colluded and conspired to deprive him of his rights. (*Id.* at 8, 25-29, 123-26.) He alleges that Judge Bull and his municipal clerks were "accepting bribes" in the amount of $25.00 to "alter the official record." (*Id.* at 8.)

Plaintiff requested and was granted a hearing by Texas DPS[4] to challenge his driver's license revocation, and it was set for April 22, 2015, before Judge Russell B. Casey (Casey) in the Justice of the Peace Court; Precinct 3 of Tarrant County, Texas. (Doc. 14 at 11-12.)

## II. NATURE OF SUITS

### A.   Case No. 3:15-CV-1162-D

Plaintiff initiated his first action five days before his driver's license revocation hearing with DPS. (doc. 3.) The first page of the filing is titled "Complaint" and purports to be brought under "Title 42 U.S.C. 1983, 1985, 1986, and others." (*Id.* at 1.) The following page is styled as "Randy

---

[3] Plaintiff's attached exhibits reflect that he did not pay the bond to appeal. (doc. 3 at 125.)

[4] Plaintiff also sues Brian Riemenschneider (Riemenschneider) and Steven McCraw (McCraw), whom he identifies as Texas DPS Officials, but he does not allege how they are involved or any specific claims against them.

Algoe [and] We the People" as plaintiffs against eighteen different defendants, including the State

of Texas, the State of Florida, the City of Grand Prairie, the City of Irving, the United States of

America, two DPS officers, two Florida judges, two Texas judges, three prosecutors, three state

police officers, a collection agency, and 100 unknown individuals who "contributed to the actions

which resulted in [Plaintiff's] damages" (Defendants). (*Id.* at 4-12.)  It asserts over twenty different

causes of action under state and federal statutes, the Texas Constitution, the United States

Constitution, and common law.  (*Id.* at 2-3, 33-41.)  The filing primarily seeks an injunction against

all Defendants from revoking his driver's license and a "writ of mandamus . . . that the oversight

authorities execute their fiduciary duty to investigate and prosecute [Defendants] and their

conspirators against [Plaintiff] and others."  (*Id.* at 26.)

The second page of the filing is titled, "Removal from State Court and Verified Complaint."

(*Id.*) It relates the prior state court cases but never clearly articulates what proceeding Plaintiff was

attempting to remove. It does not cite to the removal jurisdiction statute and alleges proper

jurisdiction of this action under the diversity and original jurisdiction statutes. (*Id.* at 4.)  The only

reference to removal in the over forty pages of the complaint is the allegation "all such things have

been committed with the intent to further the compounding injury to [Plaintiff] to deprive [Plaintiff]

of a driver's license (the prime subject of this case for removal to Federal Court.)" (*Id.* at 9.)[5]

Based on the substance of the *pro se* complaint, Plaintiff's first action is liberally construed

as a civil rights action rather than a removed state action.  *See U.S. Bank Nat. Ass'n v. Verizon

Commc'ns Inc.*, No. 3:10-CV-1842-G, 2012 WL 3100778, at *16 (N.D. Tex. July 31, 2012) (courts

must construe pleadings "liberally according to . . . substance rather than . . . form or label") (citing

_____

[5] Plaintiff has attempted to remove court proceedings before and was notified of the proper removal procedure.
*See, e.g., Irving Police Dept. v. Algoe*, No. 3:13-CV-1796-M, 2013 WL 3943291 (N.D. Tex. July 30, 2013).

4

*Hussain v. Boston Old Colony Insurance Company*, 311 F.3d 623, 633 n. 39 (5th Cir. 2002)).

**B.      Case No. 3:15-CV-1204-D**

On April 21, 2015, Plaintiff initiated his second case, styled as "State of Texas" versus

"Randy Algoe," by filing a "Notice of Filing of; and Notice of Removal to Federal Court; Request

to the Federal Court for Immediate Injunction and/or Stay of Any Warrants or Other Actions of the

Related Courts; Request for Quo Warranto Investigations; Complaint of Deprivation of Rights and

Privileges (Title 42 USC 1983, 1985, 1986)." (doc. 14 at 3.) He also included a cover letter that

referred to his previous lawsuit as his "1983 complaint" and requested that his new action to be

"merged" with the previous one. (*Id.* at 1.)  It explained that he was attempting to remove the DPS

driver's license revocation hearing to federal court and bring additional civil right violation claims.

(*Id.*)  Plaintiff's second action is liberally construed as an attempted removal of the DPS hearing.[6]

### III. REMAND OF REMOVED ACTION

Under federal removal law, any civil action brought in state court may be removed to federal

court if the district court has original jurisdiction, such as federal question or diversity jurisdiction,

over that action. 28 U.S.C. § 1441(a)-(b).  "The removing party bears the burden of showing that

federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. and Cas. Ins.*

*Co.*, 276 F.3d 720, 723 (5th Cir. 2002).  Further, "any doubt about the propriety of removal must be

resolved in favor of remand."  *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir.

2007). A court may remand a case at any time on the motion of the parties, or *sua sponte*, when it

determines that it lacks jurisdiction. 28 U.S.C. § 1447(c). Federal courts are duty-bound to examine

---

[6]On January 6, 2016, Plaintiff filed an "Ex Parte Communication and Motion" on January 6, 2016, stating that the driver's license revocation hearing had gone forward even though he "filed a notice of removal to the Justice Court in Hurst, TX." (Doc. 12 at 1.) He alleged that he refused to attend the driver's license hearing because he knew that he "need not appear as such hearings are now moot," and that the hearing resulted in an "affirmative ruling" for the continued revocation of his Texas driver's license.  (*Id.*)

their own subject-matter jurisdiction and may not proceed where it is apparent that jurisdiction does

not exist. *Union Planters Bank Nat. Ass'n v. Salih*, 369 F.3d 457, 460 (5th Cir. 2004).

## A.   <u>Revocation Hearing</u>

Here, Plaintiff attempts to remove a Texas DPS driver's license revocation hearing. This

hearing occurs pursuant to Section 521 of the Texas Transportation Code, which allows an

individual to contest a driver's license revocation by requesting a hearing with DPS to determine

if the grounds for license suspension or revocation are correct and proper. Tex. Transp. Code §

521.298. This hearing is "conducted in a municipal court or a justice court in the county in which

the person resides," and the "judge of the municipal court or the justice is designated as the presiding

officer." *Id.* at § 521.300. An individual may appeal an unfavorable ruling by timely requesting a

trial *de novo* in the county court in which the person resides. *Id.* at § 521.308. The issue at this

hearing is simply whether the driver's license revocation was proper. *Id.* at § 521.298.

Neither the original traffic citations nor the hearing before the Texas DPS implicate any

federal statute or law. *See Burditt v. City of Austin Mun. Court*, No. A–10 CA–444 SS, 2010 WL

2674564, at *1 (W.D. Tex. Jul. 2, 2010) (no federal question jurisdiction over municipal court case

where city seeks to enforce traffic citation); *see Texas v. Florence*, No. 4:06–CV–459, 2007 WL

172527, at * 1 (N.D. Tex. Jan. 18, 2007) (traffic violations are not removable to federal court); *see*

*also Southaven Kawasaki-Yamaha v. Yamaha Motor Corp.*, 128 F. Supp. 2d 975, 979 (S.D. Miss.

2000) (finding that a hearing under the Mississippi Motor Vehicle Commission, which is

"authorized to deny an application for a license, or revoke or suspend a license after it has been

granted, or to assess a civil penalty in lieu of suspension or revocation, for any of a number of

reasons," was not removable).

The Nonresident Violator Compact of 1977 is a compact enacted by many states to process traffic citations across state borders. *See Denny v. Richardson*, 234 F. App'x 862, 863 (10th Cir. 2007). There is no federal statute involved or federal oversight. *See id.* When a motorist is cited in another member state and chooses not to respond to the citation, including refusing to pay the associated fine, the other state notifies the driver's home state to suspend that motorist's driver's license until he complies with the traffic citation. *See Dudley v. Stukie*, No. 2:03-CV-0111, 2003 WL 21057050, at *1 (N.D. Tex. May 6, 2003). This Compact is, in essence, an agreement amongst several states to enforce traffic tickets without the involvement of the federal government.

In Texas, the Compact is codified in Texas Transportation Code § 703.002 and applies when a motorist resides in Texas and refuses to comply with a traffic citation issued in another state who has also enacted the Compact. *See* Tex. Transp. Code § 703 (2011). In Florida, the Compact is codified in Title 23 § 322.50 of the Florida Annotated Statutes and similarly applies when a motorist resides in Florida and refuses to comply with a traffic citation issued in another state who has also enacted the Compact. *See* Fla. Stat. § 322.50 (2016). There is no federal statute referenced or connected to the Compact. Accordingly, Plaintiff's driver's license revocation hearing does not present any question of federal law for purposes of subject matter jurisdiction.[7]

**B.**   **<u>Plaintiff's Claims</u>**

To the extent Plaintiff alleges that federal jurisdiction is proper because of his own counterclaims and alleged civil right violations, federal jurisdiction is still lacking because a federal question raised in a responsive pleading or in a notice for removal is insufficient to confer federal question jurisdiction. *See Caterpillar, Inc. v. Williams*, 482 U.S. 386, 393 (1987) (holding that "a

---

[7]Plaintiff does not allege that he is seeking to remove the DPS hearing on the basis of diversity of citizenship,.

case may *not* be removed to federal court on the basis of a federal defense . . . even if the defense is anticipated in the plaintiff's complaint") (emphasis in original); *see Vaden v. Discover Bank*, 556 U.S. 49, 60 (2009) (holding that "federal jurisdiction [cannot] rest upon an actual or anticipated counterclaim" because "a federal counterclaim, even when compulsory, does not establish 'arising under' jurisdiction"); *see also Scojo Solutions v. Mitchell*, No. 3:12–CV–3814–M, 2012 WL 5933056, at *2 (N.D. Tex. Oct. 31, 2012), *rec. adopted,* 2012 WL 5935407 (N.D. Tex. Nov. 26, 2012) (remanding forcible detainer action because defendant's federal due process claim asserted in the notice of removal failed to support the exercise of federal question jurisdiction).

Accordingly, Plaintiff's attempted removal action should be remanded for lack of subject matter jurisdiction.

## IV.  PRELIMINARY SCREENING

Plaintiff's claims are subject to screening under 28 U.S.C. § 1915(e)(2)(B) because he has been permitted to proceed *in forma pauperis*. That statute provides for *sua sponte* dismissal of the complaint, or any portion thereof, if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact."  *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory." *Id.* at 327. A complaint fails to state a claim upon which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *accord Ashcroft v. Iqbal*, 556 U.S. 662, 667-70 (2009).  To avoid dismissal for failure to state a claim, plaintiffs must allege facts

sufficient to "raise the right to relief above the speculative level." *Twombly*, 550 U.S. at 555.  Mere "labels and conclusions" nor "a formulaic recitation of the elements of a cause of action" suffice to state a claim upon which relief may be granted.  *Id.*

"While a federal court must of course give due credit to the good faith claims of the plaintiff, a court would be remiss in its obligations if it accepted every claim of damages at face value, no matter how trivial the underlying injury." *Diefenthal v. C.A.B.*, 681 F.2d 1039, 1053 (5th Cir. 1982). Furthermore, under § 1915(e), a court is not bound to accept without question the truth of a *pro se* plaintiff's allegations.  *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992).

## V.  NONRESIDENT VIOLATOR COMPACT OF 1977

Plaintiff alleges that the deprivation of his driver's license through enforcement of the Nonresident Violator Compact of 1977 works as an ex post facto law and violates the Double Jeopardy Clause by depriving him of his "right to travel." (Doc. 3 at 9; 20-21.) He also alleges that it violates the Compact Clause of the U.S. Constitution, and that even if it is constitutional, it is being improperly applied to his violations. (*Id*. at 19-20.)

The specific section that Plaintiff alleges is unconstitutional appears to be:

(a) Upon receipt of a report of a failure to comply from the licensing authority of the issuing jurisdiction, the licensing authority of the home jurisdiction shall notify the motorist and initiate a suspension action, in accordance with the home jurisdiction's procedures, to suspend the motorist's driver's license until satisfactory evidence of compliance with the terms of the traffic citation has been furnished to the home jurisdiction licensing authority. Due process safeguards will be accorded. Tex. Transp. Code § 703.002 Art. IV(a) (2011).

## A.    Ex Post Facto Clause

Article I, § 10, of the United States Constitution, prohibits a state from passing any ex post facto law. To constitute a violation of the Ex Post Facto Clause, a change in law must be both

retroactive and to the party's detriment. *See Lynce v. Mathis*, 519 U.S. 433, 441(1997) ("To fall within the ex post facto prohibition, a law must be retrospective–that is, it must apply to events occurring before its enactment–and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime"); *see also Mondy v. Quarterman*, No. 3:06-CV-2314-P-BH, 2007 WL 30263, at *2 (N.D. Tex. Jan. 4, 2007).  The Compact cannot operate as an ex post facto law here because it became effective in Texas on September 1, 1995, and the initial traffic violation occurred in 2005, nearly ten years after the Compact was in effect. *See* Tex. Transp. Code § 703.002 (2011). Plaintiff's ex post facto claim is without an arguable legal or factual basis and is therefore frivolous.

**B.**     **Double Jeopardy Clause**

Plaintiff argues that the Compact violates the Double Jeopardy Clause of the Fifth Amendment of the Constitution, which provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. amend. V.

"The Double Jeopardy Clause protects against (1) a second prosecution after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense." *United States v. Paternostro*, 966 F.2d 907, 911 (5th Cir. 1992) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969)). "In order for the Double Jeopardy Clause to have any application, there must be actions by a sovereign, which place an individual twice in jeopardy." *United States v. Cruce*, 21 F.3d 70, 74 (5th Cir. 1994) (citing *United States v. Goff*, 847 F.2d 149, 169 (5th Cir. 1988); *United States v. Stricklin*, 591 F.2d 1112, 1118 (5th Cir. 1979)).

Plaintiff alleges that the imposition of both a fine and the suspension of his driver's license for the same traffic violation functions as multiple punishments for the same offense. Courts have

consistently held that a state has the power to enforce traffic safety through a fine, suspension of a driver's license, jail time, and other restrictions. *See Mackey v. Montrym*, 443 U.S. 1, 10-13 (1979); *Taylor v. Hale*, No. 3:07-CV-1634-L, 2008 WL 4449502, at \*3-4 (N.D. Tex. Sept. 30, 2008). His double jeopardy claim is frivolous.

## C.    Compact Clause

Plaintiff alleges that the Compact violates the Compact Clause of the Constitution. The Fifth Circuit has held that the proper test to establish a violation under the Compact Clause is to determine "whether the Compact enhances state power quoad the National Government." *S&M Brands, Inc. v. Caldwell*, 614 F.3d 172, 175-76 (5th Cir. 2010) (quoting *United States Steel Corp. v. Multistate Tax Comm'n*, 434 U.S. 452, 473 (1978)). This means that a compact may not increase states' power in relation to the federal government. *See id.* The Nonresident Violator Compact of 1977 does not increase the states' power or otherwise encroach on federal power because it "does not purport to authorize the member States to exercise any powers they could not exercise in its absence." *S&M Brands, Inc.*, 614 F.3d at 175-76 (quoting *Star Scientific, Inc. v. Beales*, 278 F.3d 339, 360 (4th Cir. 2002)). This claim is also frivolous.

## D.    Unconstitutional Application

Plaintiff alleges that the Compact is unconstitutional as applied to him because Texas and Florida did not follow the proper procedural safeguards under the Compact, namely that the court clerk and not the licensing division in Florida issued notice of the unpaid traffic ticket to Texas, that the Compact applies only to commercial driver's licenses, and that the revocation is time-barred under the Compact. (Doc. 3 at 19, 22.) His allegations are liberally construed as a claim for procedural due process violations.

The Fourteenth Amendment prohibits states from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. "Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). "[A]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985) (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 313 (1950)). Accordingly, the type of procedural due process required depends on the case. *See Mathews*, 424 U.S. at 334 ("Due process is flexible and calls for such procedural protections as the particular situation demands.").

Here, Plaintiff does not dispute that he was provided sufficient notice and a trial for each of his three traffic tickets, (doc. 3 at 4-12), and sufficient notice and the opportunity to contest DPS's driver's license revocation in a justice of the peace court (doc. 14 at 12). He instead argues that these were "kangaroo courts" where the court officers were intentionally failing to follow procedures under the Compact to "intimidate the citizens into unlawful compliance of evil intent." (Doc. 3 at 22.) These conclusory allegations are insufficient for him to maintain a procedural due process claim because he "must overcome a presumption of honesty and integrity in those serving as adjudicators" *Withrow v. Larkin*, 421 U.S. 35, 47 (1975). Accordingly, this claim also fails.

## V. IMMUNITY

### A.      Sovereign Immunity

To the extent that Plaintiff generally sues the United States of America,[8] "[t]he basic rule of federal sovereign immunity is that the United States cannot be sued at all without the consent of Congress." *Block v. N.D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 287 (1983). "Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Since federal sovereign immunity is jurisdictional in nature, the consent or waiver must be unequivocally expressed. *Freeman v. United States*, 556 F.3d 326, 335 (5th Cir. 2009). The terms of the consent or waiver define the jurisdictional boundaries to entertain the suit. *Meyer*, 510 U.S. at 475. In general, the scope of a waiver of sovereign immunity is strictly construed "in favor of the sovereign." *Gomez-Perez v. Potter*, 553 U.S. 474, 491 (2008). Plaintiff has the burden to show an "unequivocal waiver of sovereign immunity." *St. Tammany Parish ex rel. Davis v. FEMA*, 556 F.3d 307, 315 (5th Cir. 2009). To the extent that his complaint may be liberally construed as alleging any civil rights claim against the United States, he has failed to show an unequivocal waiver of sovereign immunity, and any such claims must be dismissed.

### B.      Eleventh Amendment Immunity

Plaintiff sues the states of Florida and Texas for violating his right to "travel without fear of interference and intimidation" by revoking his license and attempting to collect the traffic citation fine that was issued in Escambia County, Florida. (Docs. 14 at 4, 3 at 19-23.) He also sues two DPS officers in their official capacities.

───────────────

[8] The only claim Plaintiff specifically alleged against the United States is for "misprision of felony" based on its failure to prevent the alleged civil rights violations against him. (Doc. 3 at 27.) This claim arises under a criminal statute and is specifically discussed below.

Florida, Texas, and the DPS officials, as officers of an agency of Texas,[9] are cloaked with Eleventh Amendment immunity. *McGrew v. Texas Bd. of Pardons & Paroles*, 47 F.3d 158, 161 (5th Cir. 1995); *see also Taylor v. Seamans*, 640 F. Supp. 831, 833 (E.D. Tex 1986) (finding that DPS is an arm of the State of Texas for Eleventh Amendment purposes). The Eleventh Amendment states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." "This withdrawal of jurisdiction effectively confers an immunity from suit." *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993). Therefore, "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). Congress has the power to abrogate that immunity through the Fourteenth Amendment, *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 72-76 (2000), and the State may waive its immunity by consenting to suit, *AT&T Communic'ns v. BellSouth Telecomms. Inc.*, 238 F.3d 636, 643 (5th Cir. 2001).

Neither Florida nor Texas has waived immunity by consenting to suit for any of Plaintiff's claims regarding the enforcement of the traffic ticket fines. Plaintiff's claim against Texas, Florida, and the DPS officials are barred by Eleventh Amendment Immunity and should be dismissed.

## C.   Judicial Immunity

Plaintiff alleges claims against four judges. He makes only general allegations of conspiracy against Florida Circuit Judge Ackerman and Florida Appellate Judge Terrell. He alleges claims of

---

[9] An official capacity claim is merely another way of pleading an action against the entity of which the individual defendant is an agent. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985).

solicitation of bribery[10] and obstruction of justice against Grand Prairie Municipal Court Judge Bull and Irving Municipal Court Judge Adams. (Doc. 3 at 8, 9, 28.)

The Supreme Court has recognized absolute immunity for judges acting in the performance of their judicial duties. *See Nixon v. Fitzgerald*, 457 U.S. 731, 745–46 (1982). Judges are immune from suit for damages resulting from any judicial act unless performed in "the clear absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Allegations of bad faith or malice do not overcome judicial immunity. *Id.* at 11. Because Plaintiff's complaint is based solely on acts taken in their roles as judges with respect to the traffic ticket proceedings, all four judges are absolutely immune from the claims asserted against them. *See Nixon*, 457 U.S. at 745–46.

## D.   <u>Prosecutorial Immunity</u>

Plaintiff names three prosecutors in this action. Prosecutors enjoy absolute immunity to initiate and pursue criminal prosecutions. *See Imbler v. Pachtman*, 424 U.S. 409, 430-31 (1976). This immunity extends to municipal prosecutors. *Melton v. Frank*, 114 F.3d 1184 (5th Cir. 1997) (holding that municipal prosecutors are entitled to absolute prosecutorial immunity from § 1983 damage claims) (unpublished); *see also Smith v. Connick*, No. 13-52, 2014 WL 585616, at *1-4 (E.D. La. Feb. 14, 2014) (finding that municipal prosecutors are immune from claims under 42 U.S.C. 1983, 1985, and 1988). Prosecutors are entitled to absolute immunity for acts taken to initiate prosecution, even against allegations that he acted "maliciously, wantonly, or negligently." *Rykers v. Alford*, 832 F.2d 895, 897 (5th Cir. 1987), *citing Morrison v. City of Baton Rouge*, 761 F.2d 242, 248 (5th Cir. 1985). Plaintiff has made no allegation that the prosecutors acted other than

---

[10] Plaintiff alleges that Judge Bull accepts bribes of "$25. . . to alter the official record." (Doc. 3 at 8.) He later states that this $25 was the reduced fine in an offered plea bargain made with the Grand Prairie municipal prosecutors. (*Id.* at 129.)

in an adjudicative role as a prosecutor.  Because all of the acts of which Plaintiff complains were taken during the course and scope of their duties as prosecutors, the prosecutors are entitled to prosecutorial immunity.  *See Imbler*, 424 U.S. at 423.

## VI. ROOKER-FELDMAN

To the extent that Plaintiff seeks review of his three traffic ticket court proceedings, the Court lacks jurisdiction under the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine[11] divests federal district courts of jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 281-82 (2005). "'[F]ederal district courts, as courts of original jurisdiction, lack appellate jurisdiction to review, modify, or nullify final orders of state courts.'"  *See Weekly v. Morrow*, 204 F.3d 613, 615 (5th Cir. 2000) (quoting *Liedtke v. State Bar*, 18 F.3d 315, 317 (5th Cir. 1994)).  Under 28 U.S.C. § 1257, only the United States Supreme Court has exclusive jurisdiction to review final judgments or decrees entered by the highest court of a state.  Accordingly, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).  This jurisdictional bar extends even to those cases "'in which the constitutional claims presented . . . are inextricably intertwined with the state court's grant or denial of relief.'"  *Jordaan v. Hall*, 275 F. Supp. 2d 778, 788 (N.D. Tex.

---

[11] This doctrine is named after *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923).  These decisions "exhibit the limited circumstances in which [the Supreme] Court's appellate jurisdiction over state-court judgments, 28 U.S.C. § 1257, precludes a United States district court from exercising subject-matter jurisdiction in an action it would otherwise be empowered to adjudicate under a congressional grant of authority."  *Exxon Mobil Corp. v. Saudi Basic Indus.*, 544 U.S. 280, 290 (2005).

2003) (quoting *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir. 1986)).

Plaintiff appears to seek review and oversight of three state municipal traffic cases in which he was found guilty. He complains that none of the prosecutors established the required elements (he refers to this as "corpus delicti") of the respective offenses. (Doc. 3 at 23.) He is, in essence, asking for an appellate review of the sufficiency of the evidence in the municipal cases. The *Rooker-Feldman* doctrine therefore divests this Court of subject matter jurisdiction.

## VII. HECK BAR

Plaintiff alleges, in addition to the previous claims, civil rights violations generally under the First, Fourth, Fifth, Sixth, Eight, Ninth, and Fourteenth Amendments. (Doc. 3 at 3, 35.) He provides little to no explanation as to how they apply or which aspects of his rights under these Amendments are being violated. Even if these claims were appropriately pleaded, they would be barred under the *Heck* doctrine.

In *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) the Supreme Court held that when a successful civil rights action would necessarily imply the invalidity of a plaintiff's conviction or sentence, the claim must be dismissed unless the plaintiff demonstrates that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus under 28 U.S.C. § 2254. A plaintiff does so by achieving "favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (per curiam). "[T]he *Heck* determination depends on the nature of the offense and of the claim." *Arnold v. Slaughter*, 100 F. App'x. 321, 323 (5th Cir. June 14, 2004).

Here, Plaintiff's civil rights claims are all predicated on his traffic citations and the revocation of his driver's license, and he is expressly challenging the validity of his convictions. Though he has attempted to appeal these convictions on several occasions to several different appellate courts, he has failed to show that they have been reversed, expunged, invalidated or called into question.  (Doc. 3 at 18, 28.) Accordingly, his civil rights claims barred by the *Heck* doctrine.

### VIII. FAILURE TO STATE A CLAIM

Plaintiff generally alleges many additional claims that are subject to screening under 28 U.S.C. § 1915(e)(2)(B)**.**

**A.**     **Criminal Statutes**

Plaintiff generally alleges violations of 18 U.S.C. §§ 241, 242, and 245. (Doc. 3 at 3.)  He asserts a general violation of the Hobbs Act and RICO, codified in 18 U.S.C. § 1951,1961, and 1962, by characterizing all of his previous municipal court proceedings as "a criminal enterprise." (*Id.* at 30.) He also asserts a claim of "misprision of felony," codified in 18 U.S.C. § 4, against the United States for its failure to prevent the alleged civil rights violations against him, and he alleges that municipal prosecutors Nasworthy and Chappell "had a meeting of the minds and devised a plot to use the full force of government to retaliate against [Plaintiff] by plotting his arrest, merely because [Plaintiff] chose to exercise his constitutionally guaranteed rights" in the municipal proceedings. (*Id.* at 2, 27.)

"Private citizens do not have the right to bring a private action under a federal criminal statute." *Sappore v. Arlington Career Inst.*, 2010 WL 446076, at *2 (N.D. Tex. Feb. 8, 2010) (citing *Pierre v. Guidry*, 75 F. App'x 300, 301 (5th Cir. 2003) (per curiam)).  They cannot enforce criminal statutes in a civil action. *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007).  The

statutes that Plaintiff has cited to, namely 18 U.S.C. §§ 4, 241, 242, 245, 1951, 1961, and 1962, are all criminal statutes. *See Lowe v. Wellcare Health Plans, Inc.*, No. 3:09-CV-0806-D, 2009 WL 3047424, at *2 (N.D. Tex. Sept. 22, 2009) (citing *Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402 (8th Cir. 1999)) (holding that the Hobbs Act, codified in 18 U.S.C. § 1951, prohibits interference with commerce by threats of violence but does not create a private right of action); *see Hussein v. Gates*, 657 F. Supp. 2d 77, 81 (D.C. Cir. 2009) (holding that § 241 is a criminal statute that does not expressly create a private right of action upon which a plaintiff may sue a defendant); *see Furman v. Compucom Sys., Inc.*, No. 3:03-CV-1433L, 2004 WL 1672314, at *8 (N.D. Tex. July 23, 2004) (holding that 18 U.S.C. § 4 does not grant a private right of action for a civil litigant to initiate a lawsuit under this statute); *see Rockefeller v. U.S. Court of Appeals Office*, 248 F. Supp. 2d 17, 23 (D.D.C. 2003) (holding that as a criminal statute, § 242 does not convey a private right of action); *see John's Insulation, Inc. v. Siska Const. Co.*, 774 F. Supp. 156, 163 (S.D.N.Y. 1991) (holding that § 245, which permits federal prosecution for interference with a list of federally protected activities, confers neither substantive rights nor a private right of action for damages); *see Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 256 (S.D.N.Y. 1997) (holding that 18 U.S.C. §§ 1961 and 1962 do not expressly create a private right of action). Accordingly, any claim that Plaintiff pursues under §§ 4, 241, 242, 245, 1951, 1961, and 1962 should be dismissed for failure to state a claim.[12]

---

[12] To the extent that Plaintiff is attempting to bring a civil RICO claim under 18 U.S.C. § 1964, his claim also fails because he has not alleged a pattern of racketeering activity connected to the acquisition, establishment, conduct, or control of an enterprise. *In re Burzynski*, 989 F.2d 733, 741 (5th Cir. 1993). A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continuing criminal activity. *St. Paul Mercury Ins. Co. v. Williamson*, 224 F.3d 425, 441 (5th Cir. 2000). Plaintiff alleges that the municipal prosecutors' e-mail communications and actions during the court proceedings support a finding of a pattern of racketeering in the municipal court system. (Doc. 3 at 26-27.) These vague and conclusory allegations are insufficient to show a pattern of racketeering activity connected to the acquisition, establishment, conduct, or control of an enterprise, nor do his allegations give rise to any of the offenses listed as predicate acts in 18 U.S.C. § 1961(1) upon

B.      **Civil Rights Statutes**

Plaintiff alleges violations of 42 U.S.C. §§ 1983; 1985; 1986; and 1988 at the outset of his complaint generally without explaining which Defendant violated these statutes specifically. (Doc. 3 at 12.) The only defendant about whom Plaintiff specifically alleges facts that support these claims and who has not already found to be immune from suit is Officer Harrigill.[13] (*Id.* at 12-19, 40.)

*1.      § 1983*

Plaintiff appears to assert a § 1983 claim against Florida Police Officer Harrigill, who issued him a traffic citation for speeding on November 18, 2005. (*Id.* at 12-19.) He alleges that the patrolman was abusive towards him during the traffic stop by attempting to ram his car, yelling obscenities, holding him at gunpoint, threatening to throw him in jail, and striking him in the chest. (*Id.* at 13-17.)

The Supreme Court has held that all § 1983 actions are governed by the statute of limitations for personal-injury actions for the state of suit. *See Wilson v. Garcia*, 471 U.S. 261, 273-76 (1985) (state statute of limitations period for personal injury actions applies to all claims under 42 U.S.C. § 1983). The applicable limitations period in Texas is only two years. *See Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)(noting that district courts in Texas must use Texas's general two-year, personal-injury limitations period); *see* Tex. Civ. Prac. & Rem. Code 16.003(a) (2006).   The applicable limitations period in Florida is four years.   *See Baker v. Gulf & Western Industries, Inc.*, 850 F.2d 1480, 1482 (11th Cir. 1988) (stating that Fla. Stat. Ann. § 95.11(3) provides for a four-year

_____

which a pattern of racketeering activity could be based.

[13] Plaintiff also sues Irving Police Officer Lotspeich and Grand Prairie Police Officer Ward, but he does not allege any facts at all about how either are involved or violated his civil rights under §§ 1983; 1985; 1986; and 1988 claims.  He has therefore failed to state a claim against them.

limitations period for personal injuries).

Here, the statute of limitations began to run on November 18, 2005, the date of the traffic stop, because "a cause of action [under § 1983] accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993); *see also Brown v. Georgia Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (citation omitted). Even under the longer statute, Plaintiff's § 1983 claim was filed far beyond the limitations period. There are no allegations to support tolling of the statute. *See Moore*, 30 F.3d at 620-21; *see also  Woodburn v. State of Florida Dep't of Children & Family Servs.*, 854 F. Supp. 2d 1184, 1198 (S.D. Fla. 2011). Accordingly, Plaintiff has failed to state a claim against Officer Harrigill under § 1983.

### 2.    § 1985

"Title 42 U.S.C. § 1985, part of the Civil Rights Act of 1871, creates a private civil remedy for three prohibited forms of conspiracy to interfere with civil rights under that section." *Montoya v. FedEx Ground Package Sys., Inc.*, 614 F.3d 145, 149 (5th Cir. 2010). The only form of alleged conspiracy that appears to be applicable in this case is a conspiracy to deprive any person or class of persons of the equal protection of the law, or of equal privileges and immunities under the law.[14] *See* 42 U.S.C. § 1985(3). To state a claim under § 1985(3), Plaintiff must allege: (1) a conspiracy of two or more persons; (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) which causes injury to a person or property, or

---

[14] Plaintiff fails to allege any facts to state a claim under § 1985(1), which deals with preventing a federal officer from performing his or her duties. *See Kush v. Rutledge*, 460 U.S. 719, 724 (1983). Any claim under § 1985(2) also fails because it necessarily implies the invalidity of a plaintiff's conviction and is therefore barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See Descent v. Kolitsidas*, 396 F. Supp. 2d 1315, 1319-20 (M.D. Fla. 2005).

deprives her of a right or privilege of a United States citizen. *See Hilliard v. Ferguson*, 30 F.3d 649, 652–53 (5th Cir. 1994); *Deubert v. Gulf Fed. Sav. Bank*, 820 F.2d 754, 757 (5th Cir. 1987). He must further allege that the conspirators were motivated by his race. *Horiast v. Doctor's Hosp. Of Opelousas*, 255 F.3d 261, 271 (5th Cir. 2001).

Plaintiff makes only conclusory allegations that the police officers conspired with the municipal courts and governments to violate his civil rights by having his driver's license revoked. Additionally, his claims do not include any race motivation besides the conclusory allegations that he was pulled over by Harrigill because "he thought [Plaintiff] was Hispanic" and "if [Plaintiff] had not been white, he may have even suffered more injury." (Docs. 3 at 18, 14 at 9.) This allegation is not sufficient to assert intentional discrimination based on race. *See Bryan v. City of Madison*, 213 F.3d 267, 276 (5th Cir. 2000). Plaintiff has failed to state a claim under § 1985.

### 3.   § 1986

Section 1986 "extends liability in damages to those persons 'who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 . . . are about to be committed, and having power to prevent or aid in preventing the commission of the same, (neglect or refuse) so to do." *Bradt v. Smith*, 634 F.2d 796, 801–02 (5th Cir. 1981) (citing 42 U.S.C. § 1986) (parenthesis in *Bradt*). "This section on its face requires the existence of a valid claim under § 1985." *Id.* (citation omitted). As discussed, Plaintiff has failed to state a claim under § 1985. Accordingly, he has also failed to state a claim upon which relief may be granted under § 1986, and this claim should be dismissed.

### 4.   § 1988

Plaintiff also sues under § 1988. That section provides for the award of reasonable attorney's

fees to the prevailing party in a suit brought under various statutes, including §§ 1983, 1985, and 1986. Because Plaintiff has failed to state a viable claim under any of these statutes, attorney's fees are not warranted, even if he were not proceeding *pro se*.

## C.   Fair Debt Collection Practices Act

Plaintiff alleges violations of the Fair Debt Collection Practices Act by the Florida court system and its collection agent, CSI, to collect the unpaid traffic fine past the four year statute of limitations of debts in Texas and for false reporting of an "unlawful debt." (Doc. 3 at 23; 39.)

The Fair Debt Collection Practices Act (FDCPA) is a federal statute that "makes it unlawful for debt collectors to use abusive tactics while collecting debts for others." *Perry v. Stewart Title Company*, 756 F.2d 1197, 1208 (5th Cir. 1985). Plaintiff must first state sufficient facts to indicate that the debt in question here is a "consumer debt" as defined by the FDCPA. *Turner v. Nationstar Mortgage LLC*, No. 3:14-CV-1704-L-BN, 2015 WL 585598, at *5 (N.D. Tex. Feb. 11, 2015). The FDCPA defines a "consumer" as a "natural person obligated or allegedly obligated to pay any debt" and a "debt" as an "obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money [or] property . . . which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1692a(3)-(5). To ascertain whether a debt constitutes a "consumer debt" with respect to the FDCPA, the inquiry must "focus on the nature of the debt that was incurred." *Turner*, 2015 WL 585598, at *5; *see also Vick v. NCO Fin. Sys., Inc.*, No. 2:09-CV-114, 2011 WL 1193027, at *2 (E.D. Tex. Mar. 7, 2011).

Here, Plaintiff's "debt" is a traffic citation fine. This does not qualify as a "consumer debt" such that the FDCPA applies. *See Gulley v. Markoff & Krasny*, 664 F.3d 1073, 1075 (7th Cir. 2011) (holding that municipal fines "cannot be reasonably understood as debts arising from consensual

consumer transactions for goods and services"); *Williams v. Redflex Traffic Sys., Inc.*, No. 3:06–CV–400, 2008 WL 782540, at *5 (E.D. Tenn. Mar. 20, 2008) (finding that unpaid traffic fine is not a debt under FDCPA); *Yon v. Alliance One Receivables Mgmt., Inc*., No. 0:07–CV–61362, 2007 WL 4287628, at *1 (S.D. Fla. Dec. 5, 2007) (finding that unpaid traffic ticket fine is not a debt under the FDCPA). Plaintiff's FDCPA claim should be dismissed for failure to state a claim.

**D.**    **Freedom of Information Act**

Plaintiff alleges violations of the Freedom of Information Act (FOIA) against the municipalities of Irving and Grand Prairie because they both "withheld [trial] records that were demanded, only producing a few records, and intentionally failing to certify said records." (Doc. 3 at 31.) He does not explain what records were missing or how they failed to certify the records produced.

The FOIA applies only to federal agencies and not to municipalities. *See Wright v. Curry,* 122 F. App'x 724, 725 (5th Cir. 2004) (citing 5 U.S.C. § 552) (FOIA); *see also Huckeba v. Greenville Police Dep't*, No.3:05-CV-437-G, 2005 WL 1502063, at *1 (N.D. Tex. June 24, 2005) (The FOIA "applies only to 'records' maintained by 'agencies' within the executive branch of the federal government."), *rec. adopted,* 2005 WL 1837028 (N.D. Tex. July 29, 2005). This statute does not provide a basis for the relief that he seeks, so Plaintiff fails to state a claim.

## IX. STATE LAW CLAIMS

Plaintiff also asserts state law tort claims of intentional infliction of emotional distress, false light, defamation, libel, negligence, and negligent hiring and training. (Doc. 3 at 37-39.) He does not specify any elements of the claims or explain to which set of facts each applies.

Pursuant to § 1367(a), federal courts "have supplemental jurisdiction over all other claims

24

that are so related to claims in the action within [its] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). In essence, § 1367(a) grants courts the "power to hear a state law claim under pendent or supplemental jurisdiction if (1) the federal issues are substantial, even if subsequently decided adverse to the party claiming it; and (2) the state and federal claims derive from a common nucleus of operative fact." *McKee v. Texas Star Salon, LLC*, No. 3:06–CV–879-BH, 2007 WL 2381246, at *4 (N.D. Tex. Aug.21, 2007) (citations omitted); *see also UnitedMine Workers v. Gibbs*, 383 U.S. 715, 725 (1966).

When all federal claims are dismissed prior to trial, the general rule in this Circuit is for the district court to decline exercising jurisdiction over the remaining state law claims. *Nagy v. George*, No. 3:07–CV–368–K, 2007 WL 2122175, at *10 (N.D. Tex. July 23, 2007), aff'd, 286 F. App'x 135 (5th Cir. 2008); *LaPorte Constr. Co. v. Bayshore Nat'l Bank*, 805 F.2d 1254, 1257 (5th Cir. 1986); *see also* 28 U.S.C. § 1367(c)(3). Nonetheless, this rule is "neither mandatory nor absolute." *Smith v. Amedisys Inc.*, 298 F.3d 434, 447 (5th Cir. 2002) (citation omitted). Rather, district courts are given wide discretion in deciding whether to exercise jurisdiction under such circumstances. *See Heaton v. Monogram Credit Card Bank*, 231 F.3d 994, 997 (5th Cir. 2000); *Noble v. White*, 996 F.2d 797, 799 (5th Cir. 1993); *see also UnitedMine Workers*, 383 U.S. at 726 ("[P]endent jurisdiction is a doctrine of discretion, not of [a] plaintiffs right."). In determining whether to exercise supplemental jurisdiction, courts should consider issues of judicial economy, convenience, and fairness to the litigants. *LaPorte Constr. Co.*, 805 F.2d at 1257; *Nagy*, 2007 WL 2122175, at *10.

Here, the factors weigh in favor of retaining jurisdiction over Plaintiff's state law claims

because they arises from the same "common nucleus of operative facts" as his federal claims and can be disposed of promptly. The Court should therefore exercise supplemental jurisdiction over Plaintiff's state law claims.

## A. Intentional Infliction of Emotional Distress

Plaintiff alleges intentional infliction of emotional distress for "extreme and outrageous acts" committed "with the intent to scare, intimidate, terrorize, and inflict severe mental distress" upon him. (Doc. 3 at 37.)

Intentional infliction of emotional distress is "a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann-La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004). To establish this claim under Texas law, a plaintiff must show (1) intentional or reckless conduct by the defendant (2) that was extreme and outrageous and (3) caused the plaintiff severe emotional distress. *Id.* at 445. Conduct qualifies as extreme and outrageous only when it is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (citation and internal quotation marks omitted). It must be so severe that no reasonable person could be expected to endure it. *Payne v. Baker*, No. 4:14-cv-473, 2014 WL 5581314, at *4 (N.D. Tex. Nov. 3, 2014)(citing *GTE Sw. Inc. v. Bruce*, 998 S.W.2d 605, 612 (Tex. 1999)).

The availability of this tort has been greatly limited by the Texas Supreme Court, which has held that the tort is available only in those situations in which severe emotional distress is the intended consequence or primary risk of the actor's conduct. *See Dillard Dept. Stores, Inc. v. Silva*,

106 S.W.3d 789, 797 (Tex. App.–Texarkana 2003), *aff'd*, 148 S.W.3d 370 (Tex. 2004) (per curiam).

Whether conduct qualifies as extreme and outrageous is a question of law. *Wornick Co. v. Casas*,

856 S.W.2d 732, 734 (Tex. 1993); *McMillan v. Memorial Hermann Health Systems*, No. H-14-1215,

2014 WL 7192263, at *13 (S.D. Tex. Dec. 16, 2014). Here, Plaintiff has not specifically alleged any

extreme or outrageous conduct to state a claim.

**B.**    <u>**False Light**</u>

Plaintiff alleges claims of false light against all Plaintiffs with only the explanation of

"evidence will show" numerous acts of false light have been committed. (Doc. 3 at 38.)

Texas has soundly rejected the false light tort as being duplicative of existing causes of

action which provide more procedural safeguards. *Cantu v. Rocha*, 77 F.3d 795, 809 (5th Cir. 1996)

(citing *Cain v. Hearst Corp.*, 878 S.W.2d 577, 578 (Tex. 1994)); *Montoya v. Dallas Cty. Bail Bond

Bd.*, No. 3:14-CV-1372-B, 2014 WL 4771854, at *3 (N.D. Tex. Sept. 24, 2014).

**C.**    <u>**Defamation and Libel**</u>[15]

Plaintiff alleges claims of defamation and libel with only the limited explanation of

"evidence will show" numerous acts of defamation and libel have been committed. (Doc. 3 at 38-

39.)

Under Texas law, "[d]efamation is a false statement about a person, published to a third

party, without legal excuse, which damages the person's reputation." *Fiber Sys. Int'l, Inc. v. Roehrs*,

470 F.3d 1150, 1161 (5th Cir. 2006) (citing *Moore v. Waldrop*, 166 S.W.3d 380, 384 (Tex.

App.—Waco 2005, no pet.)).   "Defamatory statements are 'published' if they are communicated to

---

[15] Libel is a type of defamation that is written, as opposed to slander, which is spoken defamation. *See Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942). Because libel is a type of defamation, these claims will be analyzed together.

a third party capable of understanding their defamatory connotation and in such a way that the third party did so understand." *Crouch v. J.C Penney Corp., Inc.*, 564 F. Supp. 2d 642, 646 (E.D. Tex. 2008), *aff'd*, 337 F. App'x 399 (5th Cir. 2009). "A statement is defamatory if it exposes a person to 'public hatred, contempt or ridicule, or financial injury or if it impeaches any person's honesty, integrity, virtue, or reputation.'" *Shaunfield v. Bank of Am.*, No. 3:12-CV-3859-B, 2013 WL 1846885, at *3 (N.D. Tex. Apr. 24, 2013) (citing *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 854 (Tex. App.—Dallas 2003, no pet.)); *see also* Tex. Civ. Prac. & Rem. Code § 73.001. Generally, a plaintiff who is a private individual (such as Plaintiff is in this case) must show that the defendant acted negligently regarding the truth of the defamatory statement at the time that he published it. *Nasti v. CIBA Specialty Chemicals Corp.*, 492 F.3d 589, 595–96 (5th Cir. 2007) (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)).

Here, Plaintiff does not explain what statements were defamatory besides broad allegations that defamatory remarks were made by the prosecutors in the municipal traffic ticket case proceedings. Defamation suits based on statements made in pleadings or otherwise in the course of a judicial proceeding are not allowed under Texas law due to an absolute privilege that protects the party from suits surrounding their judicial statements. *Shanks v. AlliedSignal, Inc*., 169 F.3d 988, 992 (5th Cir. 1999); *James v. Brown*, 637 S.W.2d 914, 916-17 (Tex. 1982); *Jenevein v. Friedman*, 114 S.W.3d 743, 745-46 (Tex. App.-Dallas 2003, no pet.). The Texas Supreme Court describes this scope of the privilege to mean "[a]ny communication, oral or written, uttered or published in the due course of a judicial proceeding is absolutely privileged and cannot constitute the based of a civil action in damages for slander or libel." *Reagan v. Guardian Life Ins. Co.*,166 S.W.2d 909, 912 (Tex.1942). The absolute privilege extends to "any statement made by the judge,

jurors, counsel, parties or witnesses, and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits and any of the pleadings or other papers in the case." *James v. Brown*, 637 S.W.2d 914, 916–17 (Tex. 1982). Plaintiff has failed to state a claim, so his allegations of defamation and libel should be dismissed.

### D.      Negligence and Negligent Hiring and Training

Plaintiff asserts general claims of negligence and "negligent training and hiring" against "all relevant Defendants" for "numerous negligent acts . . . [that] have been committed as evidence will show." (Doc. 3 at 39.)

The elements of a negligence cause of action in Texas are: (1) the existence of a legal duty; (2) a breach of that duty; and (3) damages proximately caused by that breach. *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540–41 (5th Cir. 2005) (*citing IHS Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason*, 143 S.W.3d 794, 798 (Tex. 2004)). A legal duty is a general obligation imposed by law "apart from and independent of promises made and . . . the manifested intentions of the parties, to avoid injury to others." *Southwestern Bell Tel. Co. v. DeLanney*, 809 S.W.2d 493, 496 (Tex. 1991).

Plaintiff fails to allege specific facts to show that a negligence claim has been properly stated, and or how any of the Defendants' negligence or "negligent hiring" was the proximate cause of any damages. *Super Future Equities, Inc. v. Wells Fargo Bank Minnesota, N.A.*, No. 3:06–cv–0271, 2007 WL 4410370, at *16 (N.D. Tex. Dec.14, 2007) (finding failure to show damages is an appropriate ground for dismissal on a negligence claim where plaintiff failed to provide evidence that it had been damaged). He therefore fails to state a plausible claim for negligence and negligent hiring.

29

## X.  RECOMMENDATION

Plaintiff's removal action should be **REMANDED** to the Justice of the Peace Court; Precinct 3 of Tarrant County, Texas for lack of subject matter jurisdiction. Plaintiff's federal and state law claims should be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2).

**SO RECOMMENDED** on this 29th day of September, 2016.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE


## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE